## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ELWOOD A. GREEN #359184       *

       Plaintiff       *

       v.       *       Civil Action No. GLR-12-2495

GARY D. MAYNARD       *
J. PHILIP MORGAN
DR. AVA JOUBERT       *
CMS/CORIZON INC.

       *
       Defendants       ****

### MEMORANDUM

Self-represented Plaintiff Elwood Green ("Green"), an inmate confined at Western Correctional Institution ("WCI"), filed the above-captioned civil rights Complaint regarding medical care for a back injury sustained when he fell while climbing from his bunk bed on November 30, 2010. Green requests money damages and injunctive relief mandating he be provided additional diagnostic tests, including a CT scan and MRI. ECF No. 1.

Defendants Gary D. Maynard, Secretary of Public Safety and Correctional Services and J. Phillip Morgan, former Warden of WCI (the "State Defendants") and Dr. Ava Joubert, M.D. and Corizon, Inc., f/k/a Correctional Medical Services, Inc. or CMS (the "Medical Defendants), through counsel move to dismiss the Complaint or for summary judgment. ECF Nos. 10 and 18. The dispositive motions are unopposed.[1]  A hearing is not needed to resolve the constitutional

---

[1] Pursuant to the dictates of Roseboro v. Garrison, 528 F.2d. 309 (4th Cir. 1975), Green was provided an opportunity to respond (ECF Nos. 14 and 19), but failed to do so.  In correspondence (ECF No. 15), Green requests appointment of counsel.  In the same document, Plaintiff also requests appointment of counsel in order to rebut statements such as whether he was standing comfortably or was in distress, and to discover whether videotapes show Green playing basketball. ECF No. 15.  These discrepancies are not material to the outcome of this case.  A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1),[1] is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances.  See Cook v. Bounds, 518 F.2d 779 (4th Cir. 1975); see also Branch v. Cole, 686 F.2d 264 (5th Cir. 1982).  The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant.  See Whisenant v. Yuam, 739 F.2d

issues presented in the matter.  See Local Rule 105.6. (D. Md. 2011).  For reasons which follow, Defendants' motions, construed as motions for summary judgment, shall be granted.

## Background

Green claims he was denied medical care, including treatment for pain and referral to an outside hospital for an MRI or CT scan, after he injured his back on November 30, 2010.  The uncontroverted medical record shows Green was seen by Defendant Joubert the day of his injury and complained of lower back pain and stiffness.  Neurological evaluation showed no deficits. Green was given Toradol, a pain medication, and was then able to relax and cooperate with a physical examination.  Joubert ordered x-rays of Green's lumbosacral region and cervical spine. ECF No. 10, Ex. B, Records of November 30, 2010; Ex. C, Affidavit of Ava Joubert, M.D. Although the physical examination was normal, Joubert admitted Green to the infirmary for overnight observation, and provided Acetaminophen Extra Strength, Baclofen,[2] and Ketorolac Tromethamine injection[3] for pain.  Green was discharged from the infirmary on December 1, 2010.  Id., Exhibit E, Medical Record of December 1, 2010.  The x-rays, read on December 6, 2010, showed "no evidence of an acute fracture, dislocation, or subluxation."  Normal cervical and lumbar curvature was present.  Id., Ex. D, Records of December 7, 2010.

---

160, 163 (4th Cir. 1984).  Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed.  Id.  Green's allegation presents a colorable claim under 28 U.S.C. § 1983.  Having considered Green's filings, the Court finds that he has demonstrated the ability to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so.  The issues pending before the Court do not appear unduly complicated.  Therefore, there are no exceptional circumstances at this time that would warrant the appointment of an attorney to represent Plaintiff under § 1915(e)(1).

[2] Baclofen is a muscle relaxant to relief spasms.  See http://ask.healthline.com/goldcontent/baclofen?o= 2800& qsrc=999.

[3] Ketorolac Tromethamine is a non-steroidal anti-inflammatory drug given for short-term relief of moderate to severe pain.  See http://ask.healthline.com/goldcontent/ketorolac?o=2800&qsrc=999.

Green continued to complain of back pain and on December 17, 2010, was prescribed Neurontin,[4] a medication he continues to take.  Id., Exhibit F, Medical Record.  On January 8, 2011, Green was seen for back pain and given light range of movement and stretching exercises. Id., Ex. G.  The following day, Dr. Colin Ottey saw Green standing upright in no distress talking to a fellow prisoner.  Green reported he felt fine, but was nonetheless examined by the medical department and assigned a bottom bunk.  Id.

On February 6, 2011, Green was examined for back pain.  No muscle spasm or abnormality of the spinal shape was found, normal flexion and extension were present, and Green had no posterior tenderness of the spine.  Pain medications were continued.  Id.  On February 11, 2011, Green was seen for back pain that did not radiate and did not limit his function. His ability to walk appeared normal.  Id.

Six months later, on August 20, 2011, Green again reported back pain.  Medications were continued.  Id., Ex. K.  He was seen again on October 25, 2011, when it was noted Green had a full range of movement and was able to sit and stand without difficulty.  His gait was within normal limits.  Green was given light range of movement and stretching exercises and continued on pain medications.  Id., Ex. L.

Green did not complain again of back pain until August of 2012.  He was examined on August 15 and August 25, 2012, and referred for evaluation of pain management.  Id., Ex. O.  On August 29, 2012, Green was seen by a physicians' assistant and prescribed another pain medication, Naproxen, and told to continue daily range of movement and stretching exercises. Id., Ex. P.

---

[4] Neurontin (gabapentin)  is  used for chronic pain relief.  See
http://www.lifescript.com/health/centers/osteoarthritis/lternative_treatments/acupuncture_articles/chronic_pain_treat
ment_a-z.aspx.

## Standard of Review

<u>Motion to Dismiss</u>

In reviewing a complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  <u>See</u> <u>Venkatraman v. REI Sys., Inc.</u>, 417 F.3d 418, 420 (4th Cir. 2005); <u>Ibarra v. United States</u>, 120 F.3d 472, 473 (4th Cir. 1997); <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." <u>Migdal v. Rowe Price-Fleming Int'l Inc.</u>, 248 F.3d 321, 325-26 (4th Cir. 2001); <u>see also</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted).   Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss.  <u>Id.</u>   Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Id.</u> at 563.  Thus, a complaint need only state "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 566.

<u>Motion for Summary Judgment</u>

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" <u>Bouchat v. Baltimore Ravens Football Club, Inc.</u>, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." <u>Dennis v. Columbia Colleton Med. Ctr., Inc.</u>, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." <u>Bouchat</u>, 346 F.3d at 526 (internal quotation marks omitted) (quoting <u>Drewitt v. Pratt</u>, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986)).

## Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. <u>Gregg v. Georgia</u>, 428 U.S. 153, 173

(1976).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003) citing Wilson v. Seiter, 501 U.S. 294, 297 (1991).   In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).   Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Objectively, the medical condition at issue must be serious.  See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).   Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition.  See Farmer, 511 U.S. at 839– 40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."  Rich v. Bruce, 129 F.3d 336, 340 n. 2 (4th Cir. 1997).   "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'"  Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 105 (4th Cir. 1995) quoting Farmer, 511 U.S. at 844.   If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. Farmer, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of

the risk the defendant actually knew at the time. See Brown v. Harris, 240 F.3d 383, 390 (4th Cir. 2000); citing Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Like many people, Green suffers periodic back pain following an injury. Green alleges that the contractual prison health care company has breached its contract with the State of Maryland by failing to provide him adequate health care, including a full diagnostic work-up with an MRI. Green is not a party to this contract (at most he is a third-party beneficiary), and in any event has not demonstrated that a contract was breached. Viewed in a light most favorable to Green, the Complaint alleges that he has been provided inadequate treatment for chronic back pain. The main focus of his grievance is that he believes his condition merits additional care, including an MRI. The Court is sympathetic with Green's frustration with the recurring nature of his back problems. Notwithstanding that frustration, however, the medical record does not support a finding that he suffers from a spinal injury requiring advanced diagnostics. The care provided by the Medical Defendants has not amounted to an unnecessary and wanton infliction of pain prohibited by the Eighth Amendment.

Defendants Gary Maynard, Maryland's Secretary of Public Safety and Correctional Services ("DPSCS") and J. Philip Morgan, former Warden of Western Correctional Institution, seek dismissal of the Complaint against them because there are no allegations raised indicating that they contributed in any way to a failure to provide adequate medical care to Green. They also add that they are not responsible for compliance monitoring or enforcement over prison health care providers[5] and that Green has received constitutionally adequate medical care. ECF No. 18.

---

[5] Thomas Sullivan is the Chief Executive Director of the Health Services Unit of DPSCS. Sullivan has submitted a Declaration stating that he – not Secretary Maynard – has the authority to monitor compliance in all service delivery

The law in the Fourth Circuit is well established that the doctrine of respondeat superior does not apply in § 1983 claims.  See Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit).  Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001), citing Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984).  Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).  Such a showing cannot be found here.

Defendants' dispositive motions shall be granted and the case shall be closed.  A separate Order follows.

April 16, 2013

/s/
_____
George L. Russell, III
United States District Judge

---

areas regarding prisoner health care providers.  ECF No. 18, Ex. B; see also Ex. A, Declaration of Warden J. Philip Morgan.